IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| CARNELL CONSTRUCTION CORPORATION | ) | |
| | ) | |
|     Plaintiff/Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DANVILLE REDEVELOPMENT & | ) | |
| HOUSING AUTHORITY | ) | Case No. 4:10CV00007 |
| | ) | |
|     Defendant/Counterclaim Plaintiff | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BLAINE SQUARE, LLC | ) | |
| | ) | By: Jackson L. Kiser |
|     Defendant/Counterclaim Plaintiff | ) | Senior United States District Judge |
| | ) | |
| v. | ) | |
| | ) | |
| INTERNATIONAL FIDELITY | ) | |
| INSURANCE COMPANY | ) | |
| | ) | |
|     Counterclaim Defendant. | ) | |

      Before me are Defendant/Counterclaim Plaintiff Danville Redevelopment & Housing Authority's and Counterclaim Defendant International Fidelity Insurance Company's cross Motions for Summary Judgment. The parties filed supporting and opposing briefs to the motions and I heard oral argument on January 7, 2011. The matter is now ripe for decision. For the reasons stated below, I will **DENY** IFIC's Motion for Summary Judgment and **GRANT** DRHA's Motion for Partial Summary Judgment.

## I. STATEMENT OF FACTS

This case stems from work performed on Phase 4 of the Blaine Square Hope VI Project in Danville, VA (hereinafter Phase 4 will be referred to as "the Project"). The Project involved the fourth phase in plans to construct forty single family and duplex housing units in Danville, VA. Second Amended Compl., 3. The Project was funded through a combination of Hope VI funds from the United States Department of Housing and Urban Development ("HUD") and the Virginia Housing Development Authority ("VHDA"). Ulbing Dep., 59-60. Hope VI is a grant program under HUD developed for the purpose of eradicating severely distressed public housing. Second Amended Compl., 3.

Defendant/Counterclaim Plaintiff Danville Redevelopment & Housing Authority ("DRHA") is a Public Housing Agency. *Id.* Cornerstone Danville, LLC ("Cornerstone") was the master developer for DRHA's entire Hope VI Grant, including the prior three phases of the Grant. *Id.* Defendant/Counterclaim Plaintiff Blaine Square, LLC ("Blaine Square") is an entity that was formed to develop, own, maintain, and operate the Project. *Id.* Cornerstone, as master developer, applied on behalf of DRHA for an award of tax credits to Blaine Square in connection with the Project. DRHA's First Discovery Re., 8; DRHA's Supp. Discovery Re., 4. Blaine Square was awarded those credits. *Id.* Cornerstone also negotiated the terms of and entered into a contract with The Commodore Corporation ("Commodore") for the building work associated with the Project. DRHA's Br. Summ. J., 3, ECF No. 58. Cornerstone did not employ competitive bidding to secure the Commodore agreement. *Id.* The Project engineer was Dewberry & Davis ("Dewberry"). Dewberry was responsible for certifying Plaintiff's work as satisfactory before Defendant would issue payments. *Id.*

In an effort to save money, DRHA decided to procure the necessary site preparation work

2

for the Project through competitive sealed bidding open to the public instead of allowing Cornerstone to secure a contractor. *Id.* Plaintiff/Counterclaim Defendant Carnell Construction Corporation ("Carnell"), a construction firm specializing in site preparation and a minority-owned business, submitted the low bid. Scales Dep., 20. DRHA accepted Carnell's bid, and on May 27, 2008, DRHA and Carnell entered into a contract (hereinafter the "Contract") for Carnell to perform the Site Work for the Project for a sum of $793,541.00. Second Amended Compl., 3. The Contract incorporated two sets of general conditions: C-700 Standard General Conditions of the Construction Contract ("EJCDC General Conditions") and HUD-5370 General Conditions for Construction Contracts—Public Housing Programs ("HUD General Conditions"). Carnell's Br. Opp. Summ. J., 8, ECF No. 82.

Shortly after executing the Contract, DRHA assigned its interest in the Contract to Blaine Square, though DRHA continued to supervise the site preparation work under the Contract. *Id.* at 5. Counterclaim Defendant International Fidelity Insurance Company ("IFIC"), a New Jersey corporation with its principal place of business in Newark, New Jersey, then issued a Performance Bond ("the Bond") to Carnell on June 4, 2008, thereby acting as Carnell's surety on the Project. DRHA's Br. Summ. J., 5, ECF No. 58. The performance bond is an AIA A312 Performance Bond that names IFIC as the surety, Carnell as the principal, and DRHA as the sole owner-obligee. IFIC's Br. Summ. J., 5, ECF No. 70.

DRHA issued Carnell a Notice to Proceed on May 27, 2008. Ulbing Dep., Ex. 6, p. 89, ECF No. 82-1. Carnell began work on the Project on June 9, 2008 but was immediately forced to stop because another contractor had not finished clearing the site. Scales Dep., 50-51, 74. Due to the delay, Carnell did not begin working in earnest until June 16, 2008. *Id.* at 75. That initial holdup presaged further problems and the parties soon became dissatisfied with each

other's performance under the Contract. By letter dated January 5, 2009, addressed to Carnell and copied to IFIC, DRHA informed both parties that "[a]t this point, Carnell Construction's contract with DRHA is seriously behind schedule, which could result in DRHA loosing several thousand dollars . . . . we can not consider Carnell Construction's progress or performance satisfactory." Maloney Deposition, Ex. 1.

By letter dated May 14, 2009, DRHA, through counsel, notified Carnell that, among other things, Carnell should remove all equipment and personnel from the site on the contract's completion date regardless of whether Carnell had completed the Site Work. DRHA's Br. Opp. Summ. J., 5, ex. D, ECF No. 75. The Contract's original completion date was June 3, 2009; however, one day was added to the Contract by change order, thereby extending the completion date to June 4, 2009. Form of Contract at 2; Scales Dep., 227. Carnell left the Project on or about May 14, 2009, with some work left incomplete. Scales Dep., 227-28. DRHA informed IFIC that the Completion Date had passed without the work being completed by General Form Status Inquiry completed on June 29, 2009. Maloney Dep., ex. 8.

By letter dated December 14, 2009—seven months after Carnell left the Project—counsel for DRHA informed IFIC that DRHA was "considering declaring a Contractor Default" and requested a conference with Carnell and International Fidelity within 15 days "to discuss methods of performing the Construction Contract." Maloney Dep., ex. 16. In response to the December 2009 Letter, International Fidelity mailed a General Form Status Inquiry to DRHA to which DRHA responded with a January 7, 2010 letter enclosing a copy of the December 2009 Letter. *Id.* at 25. A telephone conference was held on January 29, 2010 among DRHA and its counsel, Carnell and its counsel, Dewberry & Davis, the engineer and subcontractor, and International Fidelity. *Id.* By letter to IFIC from DRHA's counsel dated February 15, 2010,

4

DRHA declared a Contractor Default against Carnell under the Bond. *Id*. at ex. 26.  As of February 15, 2010, DRHA had already engaged other contractors to complete Carnell's scope of work on the Project.  DRHA's Responses to Carnell's Request for Admissions, nos. 115, 116, and 118.

## II.  PROCEDURAL BACKGROUND

Carnell filed its Complaint in this Court on February 17, 2010, and then filed its First Amended Complaint the next day.  DRHA filed its Answer and Counterclaims on March 23, 2010.  On June 9, 2010, DHRA moved to join IFIC as a Counterclaim Defendant.  That motion was granted though an Order issued June 28, 2010.  That same day, DRHA filed an Amended Counterclaim against IFIC and Carnell.  IFIC answered DRHA's counterclaim on August 17, 2010.  Carnell then filed a Second Amended Complaint on October 18, 2010, adding Blaine Square as a defendant.  Blaine Square added its own counterclaim against IFIC on November 11, 2010, which was identical to DRHA's counterclaim.  IFIC answered the new counterclaims on December 3, 2010.

IFIC moved for Summary Judgment against DRHA and Blaine Square on December 10, 2010.  DRHA and Blaine Square filed identical Briefs in Opposition to IFIC's Motion for Summary Judgment on December 20, 2010, to which IFIC filed a Reply Brief ten days later.  Also on December 20, 2010, DRHA and Blaine Square moved for Summary Judgment against IFIC, incorporating their Opposition Briefs as their Briefs in Support of their Motions for Summary Judgment.  IFIC filed its own Brief in Opposition to Blaine Square and DRHA's Motions for Summary Judgment on January 5, 2011.  Finally, Blaine Square moved for Voluntary Dismissal of its Counterclaim against IFIC on the same day it moved for Summary Judgment: December 20, 2010.  I heard oral argument on all these motions on January 7, 2010

5

and granted Blaine Square's Motion to Dismiss in an Order issued on January 10, 2010.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). The court must view the facts and the inferences to be drawn from them in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## IV. DISCUSSION

*I.     The Requirements of the Bond and the HUD General Conditions*

Paragraph 3 of the Bond sets forth DHRA's requirements for triggering IFIC's obligations under the bond, stating:

> If there is no Owner Default, the Surety's obligation under this Bond shall arise after:
>
> 3.1 The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and
>
> 3.2 The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and
>
> 3.3 The Owner has agreed to pay the Balance of the Contract Price to the

> Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

Bond at 2. Paragraph 4 of the Bond discusses how the Owner and Surety may arrange to complete any unfinished work contemplated in the construction contract:

> When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:
>
> 4.1 Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or
>
> 4.2 Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or
>
> 4.3 Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or
>
> 4.4 Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:
>
>> .1 After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or
>>
>> .2 Deny liability in whole or in part and notify the Owner citing reasons therefor.

Bond at 2. DRHA notes that the bond incorporated the construction contract by reference. DRHA's Br. Summ J., 8, ECF No. 75. The Bond states:

> The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

Bond at 2. The Construction Contract includes the General Conditions for Construction Contracts—Public Housing Programs, HUD Form 5370 ("HUD General Conditions"). Section 32(a) of the HUD General Conditions reads:

> If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with the diligence that will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within this time, the Contracting Officer may, by written notice to the Contractor, terminate the right to proceed with the work (or separable part of the work) that has been delayed. In this event, the PHA [Public Housing Agency] may take over the work and complete it, by contract or otherwise, and may take possession of and use any materials, equipment, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the PHA resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the PHA in completing the work.

HUD General Conditions § 32(a).

DRHA argues that, "[w]here a bond incorporates a construction contract, it must be construed in light of the underlying construction contract." DRHA's Br. Summ. J., 9, ECF No. 75. In support of its argument, DRHA cites *MCI Constructors, Inc. v. City of Greensboro*, 125 Fed.Appx. 471 (4th Cir. 2005), in which the Fourth Circuit held that "a bond is to be read in light of the contract it secured." Although the Fourth Circuit's holding was based on a North Carolina Supreme Court decision, the Virginia Supreme Court has also held that "the obligation of a building or construction contractor's bond is to be read in the light of the contract it secures." *New Amsterdam Cas. Co. v. Moretrench Corp.*, 35 S.E.2d 74, 77 (Va. 1945) (internal quotation marks and citing references omitted); *XL Specialty Ins. Co. v. Dept. of Transp.*, 624 S.E.2d 658, 661 (Va.App. 2006) ("[I]t is well-settled law in Virginia that the terms of the bond must be read together with the construction contract."). The *MCI Constructors* case involved a bond which incorporated the terms of a construction contract. *MCI Constructors, Inc.*, 125 Fed.Appx. at 473.

8

That construction contract gave the owner the right "to take possession of the work and…finish the work as the owner deems expedient" in case the owner terminated for substantial delays. *Id.* at 479. The Fourth Circuit held that the principle that a bond is to be read in light of the contract it secures, coupled with the aforementioned contract provision, authorized the owner to complete performance on the construction project without allowing the surety to attempt to finish the work before recovering on the bond. Id.

If the same bond and contract combination were presented to a court in the Commonwealth, there would be no apparent reason for a different result than the one reached by the Fourth Circuit in the *MCI Constructors* case. International Fidelity astutely points out, however, that the *MCI Constructors* opinion actually says very little about the content of the bond. Therefore it is not clear, International Fidelity posits, whether *MCI Constructors* involved the same issue before the Court in the case at bar—a bond and a contract with conflicting provisions. International Fidelity also correctly points out that nowhere in the *MCI Constructors* case does the Fourth Circuit hold that "where a bond incorporates the underlying construction contract by reference, it is the terms of the construction contract, not the bond, that govern," as DRHA asserts in its brief. Both the Fourth Circuit's opinion in *MCI Constructors* and the Virginia appellate courts' holdings in *New Amsterdam Cas. Co.* and *XL Specialty Ins. Co.* require courts to read a bond together with the construction contract, not read a construction contract as supplanting the bond. Consequently, Summary Judgment in favor of either party based on a holding that either Sections 3 and 4 of the Bond or Section 32(a) of the HUD General Conditions expressly govern would be inappropriate.

II.  *Ambiguities in Virginia Bonds*

An ambiguity exists "[w]here two constructions are equally possible." *Seals v. Erie Ins.*

9

*Exchange*, 674 S.E.2d 860, 862 (Va. 2009) (internal citing references omitted). Sections 3 and 4 of the Bond and HUD General Conditions § 32(a) provide different procedures for completing the underlying construction contract and triggering IFIC's liability under the Bond. Section 32(a) allows DRHA to take over and complete the work and imposes liability on IFIC for "any increased costs incurred by the PHA in completing the work." HUD General Conditions § 32(a). Section 4 of the Bond gives IFIC the prerogative in deciding how to complete the unfinished construction work and only imposes that obligation if the Owner has complied with Section 3. Bond at 2. Moreover, just as the Bond incorporated the underlying construction contract, the HUD general conditions incorporate the Bond. HUD General Conditions § 1(b). Reading the two documents together creates an ambiguity as to which party has the right to determine the method of completion for the underlying construction contract and the conditions precedent to invoking that right.

"[U]nder Virginia law, any ambiguities in the interpretation of a bond must be construed against the party drafting the bond." *Casey Industrial, Inc. v. Seaboard Surety Co.*, No. 1:06cv249, 2006 WL 2850652, at *5 (E.D.Va. Oct. 2, 2006). *See also Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991) (concluding that where a performance bond is prepared or adopted by a surety, any ambiguities must be construed against it—interpreting North Carolina law); *Hanson Pipe & Products, Inc. v. Falcon Const. Co.*, 55 Va. Cir. 347, 2001 WL 34037319, at *3 (Va. Cir. Ct. June 28, 2001) (citing *Thomas Somerville Co. v. Broyhill*, 200 Va. 358 (1958)) ("[B]onds may generally be construed against the bonding company."). DRHA asserts that it is entitled to partial summary judgment on the issue of International Fidelity's liability on the bond because of the ambiguity.

> If, looking at all its provisions, the bond is fairly and reasonably
> susceptible of two constructions, one favorable to the [obligee] and the

10

> other favorable to the surety company, the former, if consistent with the objects for which the bond was given, must be adopted, and this for the reason that the instrument which the court is invited to interpret was drawn by the attorneys, officers, or agents of the surety company. This is a well-established rule in the law of insurance.

*Am. Surety Co. of N.Y. v. Pauly*, 170 U.S. 133, 144 (1898).

Based on the relevant case law, I am bound to adopt the construction favorable to DRHA, which is Section 32(a) of the HUD General Conditions. That section governs DRHA's right to IFIC's performance under the Bond as a matter of law. Genuine issues of material fact exist, however, regarding whether DRHA complied with HUD General Conditions § 32(a). *See, e.g.*, Counter Claim Def.'s Br. Opp. Summ. J., 4-5, ECF No. 88 (providing a list of disputed material facts). It is the province of the jury to determine whether DRHA met its contractual obligations.

## V.  CONCLUSION

Because Bond incorporates sections of the Contract that create ambiguities regarding the obligations of IFIC and DRHA, and because I am required to construe ambiguities against IFIC, I hereby **DENY** IFIC's Motion for Summary Judgment and **GRANT** DRHA's Motion for Partial Summary Judgment. In the event that the jury finds that Carnell's right to proceed under the Contract was terminated under Section 32 of the HUD General Conditions, IFIC is liable to DRHA under the Bond in the amount of damages to be proven at trial.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

Entered this 27th day of January, 2011.

s/Jackson L. Kiser  
Senior United States District Judge