CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUN 21 2012
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| CARNELL CONSTRUCTION CORPORATION, | ) ) ) |
| Plaintiff / Counterclaim Defendant, | ) ) |
| v. | ) ) Civil Action No. 4:10CV00007 |
| DANVILLE REDEVELOPMENT & HOUSING AUTHORITY, | ) ) **MEMORANDUM OPINION** ) |
| Defendant / Counterclaim Plaintiff, | ) By: Hon. Glen E. Conrad ) Chief United States District Judge |
| v. | ) ) |
| BLAINE SQUARE, LLC, | ) ) |
| Defendant, | ) ) |
| v. | ) ) |
| INTERNATIONAL FIDELITY INSURANCE COMPANY, | ) ) ) |
| Counterclaim Defendant. | ) |

This case is scheduled to be tried a third time beginning on July 30, 2012. On June 11, 2012, the parties appeared before the court for a motions hearing. This memorandum opinion sets forth the court's rulings on the motions argued by the parties.

### Background

This case stems from work performed on Phase 4 of the Blaine Square Hope VI Project in Danville, Virginia ("the Project"), which involved the fourth phase in plans to construct forty single family and duplex housing units. The Project was funded through a combination of public

and private funds, including Hope VI funds from the United States Department of Housing and Urban Development ("HUD").

In March of 2008, defendant Danville Redevelopment & Housing Authority ("DRHA") solicited bids for the site preparation work. Plaintiff Carnell Construction Corporation ("Carnell"), a minority-owned site preparation and construction firm, submitted the lowest bid. DRHA accepted Carnell's bid, and on May 27, 2008, DRHA and Carnell entered into a contract (hereinafter "the Contract") for the site preparation work.

Shortly after executing the Contract, DRHA assigned its interest in the Contract to defendant Blaine Square, LLC ("Blaine Square") for tax purposes. However, DRHA continued to supervise the construction of the Project, including the site preparation work provided pursuant to the Contract. Counterclaim defendant International Fidelity Insurance Company ("IFIC") issued Carnell the performance bond required under the Contract, and thereby acted as Carnell's surety on the Project.

DRHA issued Carnell a notice to proceed on May 27, 2008. Carnell began work on the Project on June 9, 2008, but was immediately forced to stop because another contractor had not finished clearing the site. Due to the delay, Carnell did not begin working in earnest until the middle of June. The initial holdup led to further problems and the parties soon became dissatisfied with each other's performance under the Contract.

Carnell's costs ultimately exceeded expectations and the parties disagree as to who should bear responsibility. Additionally, at various times throughout the project, Carnell complained that it was being singled out and discriminated against due to its status as a minority

contractor. The parties entered into mediation on April 6, 2009, but were ultimately unable to resolve their disagreements.

By letter dated May 14, 2009, DRHA, through counsel, advised Carnell that DRHA had no plans to extend Carnell's contract past the completion date, and that Carnell would need to remove all equipment and personnel from the site on the completion date regardless of whether Carnell had completed the site work. Carnell left the Project on or about May 14, 2009, with some work left incomplete.

By letter dated December 14, 2009, seven months after Carnell left the project, counsel for DRHA informed IFIC that DRHA was considering declaring a contractor default, and requested a conference with Carnell and IFIC within fifteen days to discuss methods of performing the Contract. A telephone conference was held on January 29, 2010, and on February 15, 2010, DRHA declared a contractor default against Carnell under the performance bond. As of that date, DRHA had already engaged other contractors to complete the remaining work required under the Contract.

### Procedural History

Carnell commenced the instant action on February 17, 2010, asserting a claim of race discrimination against DRHA and a supplemental claim for breach of contract. The case was originally assigned to Senior United States District Judge Jackson L. Kiser, and it was later expanded to include a claim for breach of contract against Blaine Square and counterclaims for breach of contract against DRHA and IFIC.

Following the completion of discovery, DRHA and Blaine Square moved for summary judgment against Carnell, and DRHA and IFIC filed cross-motions for summary judgment. On

January 27, 2011, the motion for summary judgment filed by DRHA and Blaine Square against Carnell was granted in part and denied in part. In a separate opinion on DRHA's counterclaim against IFIC, Judge Kiser denied IFIC's motion for summary judgment and granted DRHA's cross-motion for partial summary judgment, holding that IFIC would be liable to DRHA under the performance bond, if the jury was to find that certain contractual conditions were met by DRHA.

The first jury trial commenced on February 7, 2011. On February 17, 2011, the jury returned a verdict against DRHA in the amount of $3,168,341.14 on Carnell's discrimination claim under Title VI of the Civil Rights Act of 1964. The jury also found that Carnell, DRHA, and Blaine Square breached the Contract. However, the jury did not award any damages for the breach of contract claims. Additionally, the jury found in favor of IFIC on DRHA's counterclaim against the surety.

DRHA and Blaine Square subsequently filed a motion for judgment as a matter of law or, in the alternative, motion for new trial. Judge Kiser denied the motion for judgment as a matter of law, finding that there was sufficient evidence to support Carnell's claim of race discrimination. However, he granted the motion for new trial on the basis that Carnell's primary witnesses provided false testimony at trial. Having concluded that a new trial was warranted on the basis of the false testimony, Judge Kiser declined to consider the other grounds raised in support of the defendants' motion.

The case was subsequently transferred to the undersigned district judge. Thereafter, Carnell and IFIC moved for entry of judgment on certain claims, and Carnell moved for leave to file a third amended complaint. By opinion and order entered June 27, 2011, the court denied the

motions for entry of judgment and granted the motion for leave to file a third amended complaint, which added a claim for retaliation under Title VI.

Following additional discovery and another round of summary judgment motions, the second trial commenced on February 13, 2012. The court bifurcated the case into liability and damages phases. After seven days of evidence on the claims of race discrimination, retaliation, and breach of contract, the jury began its deliberations on February 23, 2012. The jury was ultimately unable to reach a unanimous verdict, and the court was forced to declare a mistrial on February 27, 2012.

A third trial is scheduled to begin on July 30, 2012. The case is presently before the court on the following motions: (1) IFIC's motion for judgment as a matter of law; (2) Carnell's motion for a non-bifurcated trial; (3) Carnell's motion to quash the trial subpoenas issued to Lester and America Scales; (4) Carnell's motion to compel the production of documents; (5) DRHA's motion to quash the subpoena duces tecum issued to Robert Owens; (6) DRHA's motion to quash the trial subpoena issued to Geary Davis; and (7) DRHA's objection to Carnell's inclusion of W. Huntington Byrnes, counsel for DRHA, on its amended witness list.[1]

## The Parties' Motions

### I.   IFIC's Motion for Judgment as a Matter of Law

In the instant action, DRHA filed a counterclaim against IFIC, alleging that IFIC, as Carnell's surety, is liable for Carnell's failure to timely complete the site preparation work required under the Contract. IFIC has filed a renewed motion for judgment as a matter of law

---

[1] DRHA has also moved to amend its answer to include the affirmative defense of novation. During the hearing, Carnell requested, and was granted, leave to respond to the motion to amend. That motion will be taken up at the next scheduled hearing.

under Rule 50(b) of the Federal Rules of Civil Procedure, arguing that Carnell failed to satisfy the conditions precedent to recovery under the performance bond. For the reasons set forth below, the court concludes that the motion must be denied.[2]

### A. Additional Background

The performance bond issued to Carnell by IFIC is an American Institute of Architects ("AIA") A312 Performance Bond that names Carnell as the principal, IFIC as the surety, and DRHA as the owner. The bond contains provisions delineating when IFIC's obligations under the bond arise. Those provisions, which are included in paragraph 3 of the bond, require the owner to: (1) notify the contractor and the surety that it is considering declaring a contractor default; (2) attempt to arrange a meeting with the contractor and the surety no later than fifteen days after receipt of such notice; (3) if the meeting is unsuccessful, declare a contractor default and formally terminate the contractor's right to complete the contract no earlier than twenty days after the contractor and the surety have received notice that the owner is considering declaring a contractor default; and (4) pay the balance of the contract price to the surety in accordance with the terms of the construction contract or to a contractor selected to perform the construction contract in accordance with the terms of the contract with the owner. (Performance Bond at para. 3.)

Paragraph 4 of the performance bond discusses how the owner and the surety are to arrange for completion of any unfinished work contemplated in the construction contract. When

---

[2] Due to alleged technical difficulties with the court's electronic filing system, IFIC's motion was filed on 12:04 a.m. on March 27, 2012, four minutes after the 28-day filing deadline expired. Given these unique circumstances, the court will nonetheless address the arguments raised in the motion, even though the motion is technically untimely.

the owner has satisfied the conditions contained in paragraph 3 of the bond, the surety may arrange for the contractor, with the consent of the owner, to perform and complete the construction contract; undertake to complete the contract itself, through agents or independent contractors; obtain bids or negotiated proposals from qualified contractors for performance and completion of the work; waive its right to perform and complete the project and tender payment to the owner for the amount for which the surety may be liable; or deny liability in whole or in part. (Performance Bond at para. 4.)

The performance bond also incorporates the underlying Contract by reference. Pursuant to paragraph 1 of the bond, "[t]he Contractor and the Surety, jointly and severally bind themselves, their heirs, executors, and administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference." (Performance Bond at para. 1.)

The Contract in the instant case consists of a standard form contract and two sets of general conditions: the C-700 Standard General Conditions of the Construction Project prepared by the Engineers Joint Contract Documents Committee for the National Society of Professional Engineers, the American Council of Engineering Companies, and the American Society of Civil Engineers ("C-700 General Conditions"); and the General Conditions for Construction Contracts – Public Housing Programs prepared by HUD ("HUD General Conditions"). While the C-700 document specifically states that the termination procedures of the performance bond shall supercede its procedures governing termination for cause, the HUD General Conditions are silent in this respect.

In its counterclaim against IFIC, DRHA seeks to recover under Section 32(a) of the HUD General Conditions. See Amended Counterclaim at ¶ 10 ("Pursuant to Section 32(a) of the General Conditions, Carnell and its sureties, including International Fidelity, are liable for any damages resulting from Carnell's refusal or failure to complete the work within the time specified by the Contract . . . . ." Section 32(a) of the HUD General Conditions provides as follow:

> If the Contractor refuses or fails to prosecute the work, or any separable part thereof, with the diligence that will insure its completion within the time specified in this contract, or any extension thereof, or fails to complete said work within this time, the Contracting Officer may, by written notice to the Contractor, terminate the right to proceed with the work (or separable part of the work) that has been delayed. In this event, the [Housing Authority] may take over the work and complete it, by contract or otherwise, and may take possession of and use any materials, equipment, and plant on the work site necessary for completing the work. The Contractor and its sureties shall be liable for any damage to the [Housing Authority] resulting from the Contractor's refusal or failure to complete the work within the specified time, whether or not the Contractor's right to proceed with the work is terminated. This liability includes any increased costs incurred by the [Housing Authority] in completing the work.

(HUD General Conditions § 32(a).)

Before the case was tried the first time, IFIC moved for summary judgment on DRHA's counterclaim, arguing that it was clear from the record that DRHA failed to comply with the performance bond's requirements for triggering the surety's obligations under the bond. DRHA opposed the motion and filed its own motion for partial summary judgment on the counterclaim against IFIC.

In a memorandum opinion and order entered on January 27, 2011, Judge Kiser denied IFIC's motion for summary judgment and granted DRHA's motion for partial summary judgment. Reading the performance bond together with § 32(a) of the HUD General Conditions,

Judge Kiser held that an ambiguity exists as to which party has the right to determine the method of completion for the underlying construction contract and the requirements for invoking that right. In reaching this decision, Judge Kiser explained as follows:

> An ambiguity exists "where two constructions are equally possible." Sections 3 and 4 of the Bond and HUD General Conditions § 32(a) provide different procedures for completing the underlying construction contract and triggering IFIC's liability under the Bond. Section 32(a) allows DRHA to take over and complete the work and imposes liability on IFIC for "any increased costs incurred by the [Public Housing Authority] in completing the work." Section 4 of the Bond gives IFIC the prerogative in deciding how to complete the unfinished construction work and only imposes that obligation if the Owner has complied with Section 3. Moreover, just as the Bond incorporated the underlying construction contract, the HUD general conditions incorporate the Bond. Reading the two documents together creates an ambiguity as to which party has the right to determine the method of completion for the underlying construction contract and the conditions precedent to invoking that right.

(Docket No. 131 at 9-10) (internal citations omitted).

Judge Kiser emphasized that, under Virginia law, the terms of the performance bond must be read together with the construction contract, and that any ambiguities in the interpretation of a bond must be construed against the party drafting the bond. See XL Specialty Ins. Co. v. Dept. of Transp., 624 S.E.2d 658, 661 (Va. Ct. App. 2006) ("[I]t is well-settled law in Virginia that the terms of the bond must be read together with the construction contract to fully understand the extent of all parties' responsibilities.") (citing New Amsterdam Cas. Co. v. Moretrench Corp., 35 S.E.2d 74, 77 (Va. 1945)); Casey Indus., Inc. v. Seaboard Sur. Co., No. 1:06CV249, 2006 U.S. Dist. LEXIS 74589, at *14 (E.D. Va. Oct. 2, 2006) ("Under Virginia law, any ambiguities in the interpretation of a bond must be construed against the party drafting the bond."). Applying these principles, Judge Kiser concluded that he was "bound to adopt the construction favorable to DRHA, which is Section 32(a) of the HUD General Conditions." (Docket No. 131 at 11.)

Accordingly, Judge Kiser granted DRHA's motion for partial summary judgment, holding that "in the event the jury finds that Carnell's right to proceed under the Contract was terminated under Section 32 of the HUD General Conditions, IFIC is liable to DRHA under the Bond in the amount of damages to be proven at trial." (Id.)

During the first trial, IFIC moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. Judge Kiser took the motion under advisement and permitted the jury to decide the counterclaim. In accordance with his rulings on summary judgment, Judge Kiser instructed the jury that, in order to prevail on its claim against IFIC, DRHA was required to prove, among other things, that DRHA terminated Carnell's right to proceed with the work pursuant to § 32 of the HUD General Conditions. The jury ultimately returned a verdict in favor of IFIC on the counterclaim.

After Judge Kiser granted a new trial and transferred the case to the undersigned district judge, IFIC moved for entry of judgment on the counterclaim. The court denied IFIC's motion and a similar motion filed by Carnell, since it was clear from Judge Kiser's May 2, 2011 order that a new trial had been granted on all claims. Consequently, the court held that the case would need to be retried in its entirety.

During the second trial, the jury was again tasked with considering DRHA's counterclaim against IFIC. Consistent with Judge Kiser's rulings on summary judgment and the instructions given at the first trial, the jury was advised that, in order to prevail on its claim against IFIC, DRHA had to prove that DRHA terminated Carnell's right to proceed with the work pursuant to

10

Section 32 of the HUD General Conditions. The jury was ultimately unable to reach a unanimous verdict on all claims. However, the verdict form given to the jury for use in their deliberations suggested that the jury had again found in favor of IFIC.

### B. Discussion

In moving for judgment as a matter of law on the counterclaim, IFIC again argues that the provisions of the performance bond govern its obligations as Carnell's surety; that the record is undisputed that DRHA failed to satisfy the bond's requirements; and that DRHA's failure to comply with the performance bond deprived IFIC of its right to determine the method of completing the work required under the Contract. While IFIC's arguments are not without persuasive appeal, the court is constrained to conclude that the motion must be denied.

As the court emphasized during the hearing on the parties' motions, the same arguments raised in the instant motion were considered and rejected by Judge Kiser prior to the first trial. Judge Kiser not only denied IFIC's motion for summary judgment, he granted DRHA's motion for partial summary judgment, ruling that IFIC will be liable to DRHA in the amount of damages proven at trial, "[i]n the event the jury finds that Carnell's right to proceed under the Contract was terminated under Section 32 of the HUD General Conditions." (Docket No. 131 at 11.)

The court agrees with DRHA that Judge Kiser's grant of summary judgment in favor of DRHA became the law of the case. While the law of the case doctrine is a "rule of discretion," which does not preclude the court from revisiting prior rulings, the court is unable to conclude

that it would be appropriate to disturb Judge Kiser's ruling on the issues at hand.[3] Having reviewed the case law cited by Judge Kiser and the applicable Contract provisions, the court is convinced that his decision to grant DRHA's motion for partial summary judgment was not clearly erroneous. Additionally, the court is aware of no changed circumstances that would otherwise warrant a departure from that ruling. Judge Kiser's ruling provided the framework for the manner in which DRHA's claim against IFIC was presented to the jury on both of the previous occasions, and the court is of the opinion that it would be inappropriate to change course at this stage of the proceedings. Accordingly, while IFIC's arguments are not without persuasive appeal, the court must deny its motion for judgment as a matter of law.

## II. Carnell's Motion for Non-Bifurcated Trial

Carnell has filed a motion requesting a non-bifurcated trial. Carnell acknowledges, however, that the court has broad discretion to bifurcate the issues of liability and damages under

---

[3] As the court explained in its previous memorandum opinion on the parties' motions for summary judgment, the law of the case doctrine "is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter." United States v. U.S. Smelting Refining & Mining Co., 339 U.S. 186, 198 (1950). Application of the doctrine varies depending on whether a prior ruling was rendered by an appellate court or another district judge. As the United States Court of Appeals for the Fourth Circuit has noted,

> whether rulings by one district judge become binding as "the law of the case" upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not.

Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290 n.3 (4th Cir. 1982). Accordingly, the doctrine is a "rule of discretion." Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir. 1987). The court may exercise its discretion to depart from another judge's ruling if "(1) the first decision was clearly erroneous; (2) an intervening change in the law has occurred; (3) the evidence on remand is substantially different; (4) other changed circumstances exist; or (5) a manifest injustice would result." Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 469 (9th Cir. 2000).

Rule 42(b) of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 42(b) ("For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims."). For the reasons stated during the hearing, the court remains convinced that bifurcation is again warranted in the instant case. Accordingly, Carnell's motion for a non-bifurcated trial will be denied.[4]

### III. Carnell's Motion to Quash Subpoenas Issued to Lester and America Scales

Lester and America Scales are the father and wife, respectively, of Michael Scales, Carnell's president. Although neither of them were called to testify at the first or second trial, DRHA has issued subpoenas compelling their presence at the third trial. DRHA contends that the family members possess information relevant to the issue of damages, since Lester Scales started the original family construction business and America Scales serves as one of Carnell's officers.

For the reasons stated during the hearing, the court will deny Carnell's motion to quash. However, because the witnesses' testimony will be limited to the issue of damages, they will be permitted to remain in the courtroom during jury selection and the liability phase of trial.

### IV. Carnell's Motion to Compel the Production of Documents and DRHA's Motion to Quash the Subpoena Duces Tecum Issued to Robert J. Owens

In the next pair of related motions, Carnell has moved for the production of documents listed on a timeline prepared by Cedric Ulbing, a former DRHA employee, which was produced during discovery by DRHA. The documents are identified on the timeline as "Ltr. w/

---

[4] During the hearing, Carnell's counsel emphasized that it was difficult to parse the retaliation claim from the issue of damages, and that certain evidence was relevant to both issues. As the court noted during the hearing, the proper remedy is to attempt to offer any evidence during the liability phase that Carnell believes to be relevant, and to allow the court to rule on its admissibility at that time.

13

attachments from G. Wasson to DRHA Board of Commissioners re: response to Carnell's unfair treatment allegations." DRHA opposes the motion and has moved to quash a subpoena duces tecum issued to Robert J. Owens,[5] through which Carnell also sought to obtain these documents.

In its brief in opposition to Carnell's motion to compel, DRHA argues that the letter and accompanying attachments are protected under the attorney-client privilege and the work product doctrine. According to DRHA, the letter identified consists of an April 27, 2009 letter prepared and sent by W. Huntington Byrnes ("Byrnes"), as counsel for DRHA, to the Board of Commissioners. DRHA indicates that the letter also "included and incorporated various documents prepared by Wasson at Byrnes' request and delivered to Byrnes as DRHA's counsel." DRHA has submitted an affidavit from Byrnes and Wasson, which states, under penalty of perjury, that the documents attached to the letter "were prepared by Wasson at Byrnes' request," that they "were given directly to Byrnes, who included and incorporated them into his correspondence," and that "Wasson did not present any of the documents to the Board of Commissioners." DRHA has also submitted separate affidavits confirming that the April 27, 2009 letter and attachments were not provided to Robert Owens or any other third party.

Following the hearing on the instant motions, DRHA submitted the April 27, 2009 letter from Byrnes and the accompanying attachments for in camera review. The letter is a confidential communication, prepared in anticipation of litigation, which contains legal advice regarding the dispute with Carnell. The letter refers to, and is accompanied by, a twelve-tabbed packet of information. The packet includes twelve documents drafted by Wasson, which respond to the

---

[5] DRHA previously identified Owens as an expert witness pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure. Owens testified at the first trial. However, he was not called to testify at the second trial, and DRHA has since withdrawn him as a testifying expert and deleted him from the witness list for the third trial.

14

concerns raised by Carnell. Six of those documents are accompanied by exhibits that were presumably provided during discovery, or are already in Carnell's possession, such as photographs, maps, and correspondence with Carnell.

The attorney-client privilege, on which DRHA relies, "recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of the law and administration of justice." Id.

Because DRHA is the party asserting the attorney-client privilege, DRHA has the burden of establishing its applicability. To do so, it must generally demonstrate the following:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceedings, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Allen, 106 F.3d 582, 600 (4th Cir. 1997) (quoting United States v. Tedder, 801 F.2d 1437, 1442 (4th Cir. 1986)). Additionally, it is well established that the attorney-client privilege extends not only to documents authored by an attorney, but also to information submitted to him by his client's employees. Upjohn, 449 U.S. at 390 (explaining that the attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"); In re

Allen, 106 F.3d at 601 (applying Upjohn). When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. In re Grand Jury Subpoena, 204 F.3d 516, 519-520 (4th Cir. 2000).

Applying these principles, and having reviewed the entire packet withheld from production, the court concludes that the letter from Byrnes is clearly protected by the attorney-client privilege. It is undisputed that DRHA was represented by Byrnes and his law firm at the time the packet of information was prepared. As set forth above, the letter, which was drafted and signed by Byrnes, is a confidential communication that contains legal advice regarding the dispute with Carnell. The letter clearly indicates both in its heading and body that the information contained in the letter and the accompanying documents is confidential and that it should not be disseminated.

Additionally, based on the affidavit submitted by DRHA, the court also concludes that the attached documents drafted by Wasson are protected by the attorney-client privilege, since the affidavit indicates that the documents were written at Byrnes' request, for the purpose of assisting counsel in giving advice to DRHA's Board of Commissioners.[6] See Upjohn, 449 U.S. at 394-395 (holding that communications were protected by the attorney-client privilege since they "were made by Upjohn employees to counsel for Upjohn acting as such, at the direction of

---

[6] As noted above, some of the documents drafted by Wasson were accompanied by exhibits. Because Byrnes' April 27, 2009 letter and his sworn affidavit indicate that the particular exhibits were selected and compiled by Byrnes, in anticipation of litigation with Carnell, and to assist him in providing legal advice and analysis, the court concludes that the exhibits are also barred from disclosure under the work product doctrine. See In re Allen, 106 F.3d at 607-608 (holding that the attorney's choice and arrangement of employment records in anticipation of litigation constituted "opinion work product," since the attorney's "selection and compilation of these particular documents reveals her thought processes and theories regarding this litigation").

16

corporate superiors in order to secure legal advice from counsel"); In re Allen, 106 F.3d at 607 (holding that the attorney-client privilege would attach to a timeline of activities prepared by an employee, if the district court concluded, on remand, that the document was prepared for the employer's attorney after she was retained to aid her in performing her investigation and giving advice to the client). However, if there is any basis to believe that the reasons given for drafting the twelve documents is other than that represented in the affidavit proffered by DRHA, the court will conduct a hearing on such concerns at the plaintiff's request. Otherwise, the court believes that the documents attached to Byrnes' letter, which were drafted by Wasson, are privileged.

Finally, the court is constrained to conclude that the privilege has not been waived. While Carnell is of the belief that the documents at issue were likely provided to Robert Owens, DRHA has submitted sworn affidavits which confirm that the documents were not submitted for Owens' review. In the absence of any basis to question the truthfulness of the affidavits, the court must conclude that the attorney-client privilege has not been waived.

For these reasons, Carnell's motion to compel the production of documents will be denied, and the court will grant DRHA's motion to quash the subpoena duces tecum issued to Robert Owens, to the extent the subpoena sought to compel the production of Byrnes' April 27, 2009 letter and the accompanying documents.

V. **DRHA's Motion to Quash the Trial Subpoena Issued to Geary Davis**

DRHA has also moved to quash the trial subpoena issued to Geary Davis, who has plans to travel outside of the United States from August 1, 2012 through August 12, 2012. This motion will be denied as moot. Carnell has indicated that if it becomes necessary to call Mr. Davis, it will endeavor to do so before August 1, 2012. If Mr. Davis is not called before August

1, both sides will be permitted to use his deposition testimony and/or the testimony provided by Davis during the second jury trial.

### VI. DRHA's Objection to Carnell's Inclusion of W. Huntington Byrnes on its Witness List

In the amended witness list filed on April 19, 2012, Carnell listed W. Huntington Byrnes, counsel for DRHA, as a potential witness. In response to DRHA's objection, Carnell emphasizes that it is undisputed that Byrnes has firsthand knowledge regarding an incident that occurred near the end of Carnell's work on the Project. Specifically, Byrnes was present on the work site when a dispute arose between the parties, during which Vincent Scales, Carnell's project manager, refused to move a dump truck from one of the Project's entrances. Carnell emphasizes that DRHA requested and received permission to call Mr. Byrnes as a witness during the second trial,[7] and that it should likewise have the opportunity to do so at the third trial.

For the reasons stated during the hearing, the court will sustain DRHA's objection to Carnell's inclusion of Byrnes on its witness list. However, Vincent Scales will be permitted to testify as to how he perceived the interactions with Byrnes, and to the fact that the interactions were recorded by counsel. Rather than calling Byrnes as a witness, however, the court believes that it would be more appropriate for the parties to reach some form of stipulation as to Byrnes' reasons for being on the work site on the day in question.[8]

---

[7] DRHA ultimately declined to call Byrnes as a witness.

[8] During the second trial, DRHA took the position that its decision to remove Carnell from the Project was based, at least in part, on the incident with Vincent Scales. Carnell's position, however, is that the dispute between the parties on the day in question was escalated by Byrnes' presence. Having heard the parties' evidence on this issue, the court is convinced that Byrnes' input regarding the incident can be received in some form short of him testifying as a witness at trial.

18

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 20th day of June, 2012.

                                                                */s/ Glen Conrad*
                                                          Chief United States District Judge