CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILE, VA
FILED
JAN 08 2013
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

CARNELL CONSTRUCTION              )
CORPORATION,                      )
                                  )
        Plaintiff / Counterclaim Defendant,   )
                                  )
v.                                )
                                  )        Civil Action No. 4:10CV00007
DANVILLE REDEVELOPMENT &          )
HOUSING AUTHORITY,                )        **MEMORANDUM OPINION**
                                  )
        Defendant / Counterclaim Plaintiff,   )        By: Hon. Glen E. Conrad
                                  )        Chief United States District Judge
v.                                )
                                  )
BLAINE SQUARE, LLC,               )
                                  )
        Defendant.                )

        The third jury trial in the instant case was conducted from July 30, 2012 through August

15, 2012.  The parties have now filed a number of post-trial motions.  This memorandum opinion

sets forth the court's rulings on the pending motions.

## Factual Background

        This case stems from work performed on Phase 4 of the Blaine Square Hope VI Project

in Danville, Virginia ("the Project"), which involved the fourth phase in plans to construct forty

single family and duplex housing units.  The Project was funded through a combination of public

and private funds, including Hope VI funds from the United States Department of Housing and

Urban Development ("HUD").

        In March of 2008, defendant Danville Redevelopment & Housing Authority ("DRHA")

solicited bids for the site preparation work.  Plaintiff Carnell Construction Corporation

("Carnell"), a minority-owned site preparation and construction firm, submitted the lowest bid.

DRHA accepted Carnell's bid, and on May 27, 2008, DRHA and Carnell entered into a contract (hereinafter "the Contract") for the site preparation work.

Shortly after executing the Contract, DRHA assigned its interest in the Contract to defendant Blaine Square, LLC ("Blaine Square") for tax purposes. However, DRHA continued to supervise the construction of the Project, including the site preparation work provided pursuant to the Contract. International Fidelity Insurance Company ("IFIC") issued Carnell the performance bond required under the Contract, and acted as Carnell's surety on the Project.

Carnell began its work on June 9, 2008. Unfortunately, delays and disputes ensued and each side became dissatisfied with the other's performance under the Contract. Additionally, at various times throughout the Project, Carnell complained that it was being singled out and discriminated against due to its status as a minority contractor. The parties entered into mediation on April 6, 2009, but were ultimately unable to resolve their disagreements.

By letter dated May 14, 2009, DRHA, through counsel, advised Carnell that DRHA had no plans to extend Carnell's contract past the completion date, and that Carnell would need to remove all equipment and personnel from the site on the completion date regardless of whether Carnell had finished the site work.[1] Carnell left the Project on or about May 14, 2009, with some work left incomplete. Several months later, DRHA declared a contractor default against Carnell under the performance bond issued by IFIC.

### Procedural History

Carnell filed the instant action on February 17, 2010, asserting a claim of race discrimination against DRHA and a supplemental claim for breach of contract. The case was

---

[1] The Contract's original completion date was June 3, 2009; however, one day was added to the Contract by change order, thereby extending the completion date to June 4, 2009.

originally assigned to Senior United States District Judge Jackson L. Kiser, and it was later

expanded to include a claim for breach of contract against Blaine Square, and a counterclaim for

breach of contract against Carnell.

Following the completion of discovery, DRHA and Blaine Square moved for summary

judgment on Carnell's claims.  On January 27, 2011, the motion was granted in part and denied

in part.  Judge Kiser held that the Virginia Public Procurement Act applies to the Contract, and

that "the amount that Carnell can recover for additional work under the Contract is limited, as a

matter of law, to a statutory maximum of $142,557.57."  Carnell Constr. Corp. v. Danville

Redevelopment & Hous. Auth., No. 4:10CV00007, 2011 U.S. Dist. LEXIS 8259, at *28-29

(W.D. Va. Jan. 27, 2011) (applying Va. Code § 2.2-4309)).[2]  The defendants' motion for

summary judgment was otherwise denied with respect to Carnell's claims for breach of contract

and race discrimination.

The first jury trial commenced on February 7, 2011.  On February 17, 2011, the jury

returned a verdict against DRHA in the amount of $3,168,341.14 on Carnell's discrimination

claim under Title VI of the Civil Rights Act of 1964.  The jury also found that Carnell, DRHA,

and Blaine Square breached the Contract.  However, the jury did not award any damages for the

breach of contract claims.

DRHA and Blaine Square subsequently filed a motion for judgment as a matter of law or,

in the alternative, motion for new trial.  Judge Kiser denied the motion for judgment as a matter

of law, finding that there was sufficient evidence to support Carnell's claim of race

discrimination.  However, he granted the motion for new trial on the basis that Carnell's primary

---

[2] As will be discussed infra, Virginia Code § 2.2-4309 limits the amount that a fixed-price contract may be increased to no "more than twenty-five percent of the amount of the contract or $50,000, whichever is greater, without the advanced written approval of the Governor or his designee, in the case of state agencies, or the governing body, in the case of political subdivisions."  Va. Code § 2.2-4309(A).

witnesses provided false testimony at trial. Specifically, Judge Kiser found that Michael Scales, the president of Carnell, and Vincent Scales, Carnell's project manager, both testified falsely regarding Carnell's ability to perform work for the Virginia Department of Transportation subsequent to its dispute with DRHA.

The case was subsequently transferred to the undersigned district judge. Thereafter, Carnell moved for entry of judgment on its claim of discrimination, and for leave to file a third amended complaint. By opinion and order entered June 27, 2011, the court denied the motion for entry of judgment and granted the motion for leave to file a third amended complaint. The third amended complaint added a claim of race discrimination against Blaine Square and a claim of retaliation against Blaine Square and DRHA.

Following additional discovery and another round of summary judgment motions, the second trial commenced on February 13, 2012. The court bifurcated the case into liability and damages phases. After seven days of evidence on the claims of race discrimination, retaliation, and breach of contract, the jury began its deliberations on February 23, 2012. The jury was ultimately unable to reach a unanimous verdict, and the court was forced to declare a mistrial on February 27, 2012.

The third trial began on July 30, 2012 and spanned 13 days. The court again bifurcated the case into liability and damages phases. In the liability phase, the defendants prevailed on Carnell's claims of race discrimination and retaliation. However, the jury found in favor of Carnell on its claim that the defendants breached the Contract by failing to pay for extra work. The jury also found in favor of Carnell on its claim that the defendants breached the Contract by removing Carnell from the project without just cause.

4

Prior to the start of the damages phase, the court heard argument from counsel on the measure of damages available on the remaining claims for breach of contract. The parties first addressed Judge Kiser's ruling on the application of the twenty-five percent cap set forth in Virginia Code § 2.2-4309. Upon considering the parties' arguments regarding the nature of the Contract, the court concurred with Judge Kiser's determination that § 2.2-4309 applies in this case, and that the statute limits Carnell's recovery for extra work. Rather than instructing the jury on the statutory cap, the court advised the parties that it would reduce any verdict that was for an amount greater than that permitted under the statute.

With respect to Carnell's claim that the defendants breached the Contract by removing Carnell from the Project without just cause, the court ruled, as a matter of law, that Carnell was entitled to recover the remaining retainage withheld by the defendants. The court also held that Carnell would be entitled to recover the profit it lost as a result of being removed from the Project.

While Carnell argued, for the first time, that it should also be entitled to recover "consequential damages," such as "attorney's fees and costs in other cases" filed against Carnell (08/15/2012 Realtime Tr. at 49, 52), the court rejected Carnell's argument, since such damages were not pled in Carnell's third amended complaint. Having concluded that Carnell was entitled to the balance of the withheld retainage as a matter of law, the court limited Carnell's evidence on the second breach of contract claim to the profit that Carnell lost by not being able to complete its remaining work on the Project.

During the damages phase, the jury awarded Carnell $515,000.00 for its claim related to unpaid extra work, and $400,000.00 for the claim related to Carnell's removal from the project. Following the return of the jury's verdict, the court advised the parties that it would likely "grant

5

judgment in favor of Carnell for the total amount of the retainage, the balance of the 25 percent on the extra work, and the amount that [Michael] Scales himself testified constituted profits lost on the contract as a result of the breach of the contract and the removal of Carnell from the project." (08/15/2012 Realtime Tr. at 190-191.) However, the court withheld the entry of judgment until the parties had the opportunity to brief the relevant issues.

The case is presently before the court on the following motions: (1) Carnell's motion regarding damages; (2) DRHA's motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil Procedure, and for a reduction of the damages awarded by the jury; (3) Blaine Square's motion for judgment as a matter of law under Rule 50(b), and for a reduction of the damages awarded by the jury; (4) DRHA's motion for attorney's fees and costs; (5) Blaine Square's motion for attorney's fees and costs; (6) DRHA's motion to strike Carnell's brief in opposition to its motion for attorney's fees and costs; (7) Blaine Square's motion to strike Carnell's brief in opposition to its motion for attorney's fees and costs; and (8) Carnell's motion to strike Blaine Square's attachment to its reply brief in support of the motion for attorney's fees and costs. The motions have been briefed and are ripe for review.[3]

## The Parties' Motions

### I.   Carnell's Motion Regarding Damages and the Defendants' Motions for Judgment as a Matter of Law and for a Reduction of the Damages Awarded by the Jury

Carnell has filed a motion requesting "that the court find that section 2.2-4309 of the Virginia Public Procurement Act is inapplicable to the contract at issue, grant a new trial on damages, or in the alternative, grant judgment in the amount of damages awarded by the jury, together with the retainage awarded by the court." (Docket No. 739 at 24.) The defendants

---

[3] The parties declined to be heard on the pending motions.

oppose the motion, and have moved for judgment as a matter of law on Carnell's claim for unpaid extra work and for a reduction of the damages awarded by the jury.

### A.   Breach of Contract Claim for Extra Work

Each of the parties' arguments regarding Carnell's claim for extra work concern the application of the Virginia Public Procurement Act (the "VPPA" or "Act"). DRHA and Blaine Square argue that they are entitled to judgment as a matter of law, because Carnell failed to present sufficient evidence of compliance with the VPPA's notice of claims requirement. Carnell argues that the VPPA's notification and modification provisions are not applicable to this case, and that they should not limit the amount to which Carnell is entitled to recover for extra work.

### 1.   Additional Background

The VPPA establishes "the public policies pertaining to governmental procurement from nongovernmental sources." Va. Code § 2.2-4300(B). It was enacted to ensure "that public bodies in the Commonwealth obtain high quality goods and services at a reasonable cost, that all procurement procedures be conducted in a fair and impartial manner with avoidance of any impropriety or appearance of impropriety, that all qualified vendors have access to public business[,] and that no offeror be arbitrarily or capriciously excluded." Va. Code § 2.2-4300(C). The Act requires that "[a]ll public contracts with nongovernmental contractors . . . for the purchase of services . . .  be awarded" in accordance with its provisions, "unless otherwise authorized by law." Va. Code § 2.2-4303(A).

The VPPA "impose[s] certain procedures and limitations on the processing and enforcement of contract claims which are subject to the Procurement Act." Flory Small Bus.

7

Dev. Ctr. v. Commonwealth, 541 S.E.2d 915, 919 (Va. 2001).  "These are mandatory, procedural

requirements which must be met in order for a court to reach the merits of a case."  Id.

As relevant in the instant case, the VPPA prescribes procedures for filing a contractual

claim:

> Contractual claims, whether for money or other relief, shall be submitted in
> writing no later than 60 days after final payment.  However, written notice of the
> contractor's intention to file a claim shall be given at the time of the occurrence or
> beginning of the work upon which the claim is based . . . .

Va. Code § 2.2-4363(A).  The VPPA also limits the amount that a fixed-price contract may be

increased without advance written approval from the applicable governing body:

> A public contract may include provisions for modifications of the contract during
> performance, but no fixed-price contract may be increased by more than twenty-
> five percent of the amount of the contract or $50,000, whichever is greater,
> without the advance written approval of the Governor or his designee, in the case
> of state agencies, or the governing body, in the case of political subdivisions.  In
> no event may the amount of any contract, without adequate consideration, be
> increased for any purpose, including, but not limited to, relief of an offeror from
> the consequences of an error in its bid or offer.

Va. Code § 2.2-4309(A).

Before the case was tried the first time, DRHA and Blaine Square argued on summary

judgment that Carnell's breach of contract claims are limited and/or barred by these provisions of

the VPPA.  In a memorandum opinion and order entered on January 27, 2011, the motion was

granted in part and denied in part by Judge Kiser.  While Carnell maintained that the Act has no

application in this case, Judge Kiser rejected Carnell's arguments on this issue, and ruled that

"[t]he VPPA applies to DRHA's and Blaine Square's contract with Carnell."  Carnell Constr.

Corp., 2011 U.S. Dist. LEXIS 8259, at *22, 24 (emphasis in original).

8

Having reached this conclusion, Judge Kiser held that Carnell "was required to comply with [the VPPA's] procedures for filing a contractual claim." Id. at *24.  However, he denied DRHA's motion for summary judgment on this issue, since the evidence revealed a dispute of material fact. Id. at *27.  Assuming the truth of Vincent Scales' declaration that Carnell delivered notice of intention to file suit to DRHA immediately following the parties' mediation, and assuming that the mediation encompassed all claims, Judge Kiser held that "[t]his would constitute adequate notice under the 'at the time of occurrence' language of § 2.2-4363(A)." Id. Judge Kiser reasoned that "until the mediation was concluded unsuccessfully, Carnell could not have known whether it needed to file suit." Id.

On the other hand, Judge Kiser granted the defendants' motion for summary judgment to the extent the defendants argued that the VPPA sets a statutory ceiling on the amount that Carnell can recover for extra work.  Applying Virginia Code § 2.2-4309, Judge Kiser held that "the amount that Carnell can recover for additional work under the contract is limited, as a matter of law, to a statutory maximum of $142,557.57." Id. at *28.  In reaching this decision, Judge Kiser explained as follows:

> The original fixed-price sum of the Contract was $793,541.00 and was increased to $849,368.68 through various approved change orders.  Twenty-five percent of the original contract price is $198,385.25.  Minus the $55,827.68 already added to the original price, the remaining amount by which the Contract could be increased by claims for extra work is $142,557.57.

Id. at *28.

As the parties acknowledge in their briefs, Judge Kiser's rulings on these issues became the law of the case.  See United States v. United States Refining & Mining Co., 339 U.S. 186,

198 (1950) (explaining that the law of the case doctrine "is a rule of practice, based upon sound policy that when an issue is once litigated and decided, that should be the end of the matter").[4]

**2.      The Parties' Arguments**

**a.      The Statutory Notice Requirement**

In moving for judgment as a matter of law on Carnell's breach of contract claim for extra work, DRHA and Blaine Square argue that Carnell failed to present sufficient evidence to establish that it provided adequate notice of its intention to file suit, as required by § 2.2-4363(A). For the following reasons, the court is unable to agree.

During the liability phase, the jury was tasked with determining whether Carnell complied with the VPPA's notice requirement. The court's final instructions on Carnell's breach of contract claim for extra work read, in pertinent part, as follows:

> [Y]ou must also determine whether Carnell complied with requisite statutory and contractual provisions.
>
> You must first consider whether Carnell complied with the terms of the Virginia Public Procurement Act or "VPPA." These terms are mandatory and may not be waived or modified.
>
> The VPPA provides that in order for Carnell to be entitled to payment for any extra work, Carnell must have given written notice of its intention to file a claim "at the time of the occurrence or beginning of the work upon which the claim is based." This written notice is a condition precedent to Carnell's right to receive payment for the extra work. A condition precedent is a condition which must be satisfied in order to obtain relief.

---

[4] As explained in previous opinions in this case, the law of the case doctrine is a "rule of discretion." Smith v. Bounds, 813 F.2d 1299, 1304 (4th Cir. 1987). When a decision establishes the law of the case, it should be followed in all subsequent proceedings in the same case, unless: "(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice." Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988).

> If you find that Carnell did not satisfy this condition precedent with respect to its claim for extra work, you must find in favor of DRHA and Blaine Square on this claim.

(Docket No. 719 at 32.)

Applying this instruction, the jury ultimately found in Carnell's favor on this issue. Based on the court's recollection of the testimony and evidence presented, including the testimony of Michael Scales on August 13, 2012, the court is unable to conclude that there was no legally sufficient evidentiary basis for the jury to do so. A reasonable jury could have found that the parties agreed to mediate all of Carnell's claims for extra work, that the mediation efforts were unsuccessful, and that the defendants received written notice of Carnell's intent to file suit on the unresolved claims. As Judge Kiser ruled on summary judgment, such evidence would satisfy the statutory notice requirement.

Simply stated, the court remains convinced that the defendants are not entitled to judgment as a matter of law on Carnell's breach of contract claim for extra work. Accordingly, the defendants' renewed motions under Rule 50(b) will be denied with respect to this issue.

### b. **The Statutory Cap**

Having concluded that Carnell is entitled to recover on its claim for extra work, the court must determine whether the amount of recovery is limited by the statutory cap set forth in Virginia Code § 2.2-4309. As previously stated, Judge Kiser ruled that the cap applies in this case, and that "the amount that Carnell can recover for additional work under the Contract is limited, as a matter of law, to a statutory maximum of $142,557.57." Carnell Constr. Corp., 2011 U.S. Dist. LEXIS 8259, at *28. Having considered the parties' arguments, the court concludes that Judge Kiser's ruling did not involve clear error and that it should not be disturbed.

i.     **The Contract is a fixed-price contract subject to the statutory cap.**

Section 2.2-4309 limits the amount that a "fixed-price" contract may be increased in the

absence of prior written approval from the Governor, in the case of "state agencies," or the

governing body, in the case of "political subdivisions." Va. Code § 2-2.4309(A). In its first set

of arguments against the application of the statute, Carnell contends that the Contract was not a

fixed-price contract with a state agency or political subdivision and, thus, that it does not fall

within the ambit of the statute.

Having reviewed the applicable Contract documents, the court concludes that the

evidence supports Judge Kiser's decision that the Contract was for a "fixed-price sum." Carnell

Constr. Corp., 2011 U.S. Dist. LEXIS 8259, at *28. A fixed-price contract "represents an

agreement by the contractor to furnish to the government the supplies or services called for at a

specified price." Government Contracts: Law, Administration, Procedure, Ch. 19, § 19.20

(Walter Wilson, Gen. Ed.) (LexisNexis Matthew Bender). In this case, the Form of Contract,

executed by Carnell and DRHA, states that Carnell shall be paid "the sum of $793,541.00" for its

"performance of the Contract." (Docket No. 742-3.) The Form of Contract also states that the

Contract "shall consist" of nine enumerated sets of documents, including the Bid Form and two

sets of general conditions, the C-700 Standard General Conditions of the Construction Project

("C-700 General Conditions"), and the General Conditions for Construction Contracts – Public

Housing Programs prepared by HUD ("HUD General Conditions"). (Id.) On the Bid Form,

which was also signed by Carnell, Carnell proposed "to furnish all labor, materials, equipment

and services required to perform all site work for Phase IV of the HOPE VI project . . . for the

firm, fixed price" of $793,541.00. (Docket No. 742-4) (emphasis added).

12

While Carnell now claims that other documents contained in the bid package establish that it entered into a unit-price contract with the defendants instead of a fixed-price contract, the documents cited by Carnell were not expressly incorporated into the Contract. Moreover, the mere fact that unit prices were used to calculate Carnell's total bid does not convert the Contract into a unit-price contract. See Steven G.M. Stein, Construction Law, P 3A.02 (LexisNexis Matthew Bender) ("[I]t is common for many fixed price contracts to set forth a contract sum which is based upon unit prices and estimated quantities."). Likewise, the mere fact that the C-700 General Conditions contain provisions applicable "in the case of Unit Price Work" does not transform the instant Contract into a unit-price agreement. (Docket No. 739-4 at 13.) Accordingly, Judge Kiser did not err in ruling that the Contract is a fixed-price contract governed by § 2.2-4309.

The court must also reject Carnell's argument that § 2.2-4309 is inapplicable because it refers only to "state agencies" and "political subdivisions," and not to other public entities such as housing authorities. Under Virginia law, redevelopment and housing authorities are classified as political subdivisions. See Va. Code § 36-4 (establishing the creation of local redevelopment and housing authorities as "political subdivision[s] of the Commonwealth"). Thus, even accepting Carnell's reading of the statute, § 2.2-4309 applies to the Contract and, thus, limits the amount that the Contract can be increased by claims for extra work.[5]

### ii.     The statutory cap applies in actions for breach of contract.

In addition to arguing that the Contract is not subject to the twenty-five percent cap set forth in § 2.2-4309, Carnell also contends that the General Assembly did not intend for the

---

[5] The court notes that it is undisputed that Carnell did not obtain advance written approval authorizing an increase in the Contract price by more than twenty-five percent.

statute to apply in "contract disputes" or "legal actions." (Docket No. 739 at 14.) This argument, however, is unpersuasive.

When interpreting a statute, the court "must give effect to the legislature's intention as expressed by the language used unless a literal interpretation of the language would result in a manifest absurdity." Conyers v. Martial Arts World of Richmond, Inc., 639 S.E.2d 174, 178 (Va. 2007). "If a statute is subject to more than one interpretation, [the court] must apply the interpretation that will carry out the legislative intent behind the statute." Id. Moreover, "[t]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 651 S.E.2d 637, 639 (Va. 2007) (internal citation and quotation marks omitted). To the extent a statute alters the common law, such change "is limited to that which is expressly stated in the statute or necessarily implied by its language . . . ." Mitchem v. Counts, 523 S.E.2d 246, 250 (Va. 2000).

Applying these principles, the court must reject Carnell's argument that § 2.2-4309 does not limit the amount that it can recover for extra work in an action for breach of contract. It is undisputed that payments for extra work increase the original price of a contract. By enacting § 2.2-4309, the General Assembly chose to cap the amount by which a fixed-price contract can be increased without prior written consent. As set forth above, the statute states that "no fixed-price contract may be increased by more than twenty-five percent of the contract or $50,000, whichever is greater, without the advance written approval" of the applicable governing body. Va. Code § 2.2-4309(A); see also Pennsylvania Electric Coil, Ltd. v. City of Danville, 329 F. App'x 399, 401 (4th Cir. 2009) (explaining that a "25% cap on price increases is mandated by Virginia law"). If a fixed-price contract cannot be legally modified to increase its price by more than twenty-five percent without advance approval, it stands to reason that a contractor cannot

14

obtain more than the statutory cap in a legal action brought to recover amounts which reflect modifications to the contract price. While the statute does not specifically state that the limitation applies to contractual disputes or legal actions, the court is convinced that this is necessarily implied by its language. To hold otherwise, as the defendants emphasize, "would result in the absurdity of allowing recovery on a public contract in excess of the amount that the legislature has specifically said that the contract may legally be increased." (Docket No. 742 at 12); see also American-LaFrance & Foamite Industries, Inc. v. Arlington County, 178 S.E. 783, 784 (Va. 1935) ("[Municipal corporations] have such powers to contract, and only such powers, as the legislature grants to them. When the legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may no more bind itself by implied contract than by the forbidden express contract. All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded, or nullified . . . .").

### iii.    **The statutory cap is not unconstitutional.**

In its final arguments against the application of the statutory cap, Carnell contends that a statute which prohibits full recovery for breach of contract unlawfully abrogates the common law; results in an unjust taking in violation of the Fifth Amendment to the Constitution of the United States and Article I, § 11 of the Constitution of Virginia; and violates the constitutional guarantee of due process. Once again, however, the court finds Carnell's arguments unpersuasive.

"It is firmly established that all actions of the General Assembly are presumed to be constitutional." Etheridge v. Med. Ctr. Hospitals, 376 S.E.2d 525, 528 (Va. 1989) (citing cases). Thus, "the party assailing the legislation has the burden of proving that it is unconstitutional, and

if a reasonable doubt exists as to a statute's constitutionality, the doubt must be resolved in favor of its validity." Id.  Carnell's constitutional challenges "must be examined in the light of these long-standing principles." Id.

Carnell's first contention is that § 2.2-4309 unconstitutionally abrogates the common law to the extent that it bars full recovery for extra work.  As the Supreme Court of Virginia has previously explained, however, "[on]e area in which the General Assembly's authority has not been forbidden or restricted is the common law." Id. at 532.  "More to the point, the legislature has the power to provide, modify, or repeal a remedy," Id., including a remedy for breach of contract. See Phipps v. Sutherland, 111 S.E.2d 422, 425 (Va. 1959) ("Vested interests and contractual rights may not be impaired or destroyed, but mere matters of procedure and remedy for their enforcement or preservation may be altered, curtailed or repealed at the will of the legislature so long as a reasonable opportunity and time are afforded to enforce and protect such interests and rights.").

This principle is further supported by Weicking v. Allied Med. Supply Corp., 391 S.E.2d 258 (Va. 1990), a case cited by Carnell.  In Weicking, the Supreme Court of Virginia held that the Commonwealth is bound by its "valid contracts entered into by duly authorized agents of the Commonwealth," and that the doctrine of sovereign immunity "has no application in such actions." Wiecking, 391 S.E.2d at 261.  In reaching this decision, however, the Court recognized the legislature's ability to enact statutes which affect the remedies available to government contractors:

> . . . It is true that the legislature has the power to withhold appropriations to cover the state's obligations, and impose special procedures for the processing of claims, their enforcement, and time limitations upon their enforceability.  Those safeguards, however, affect only the remedy, not the validity of the obligation on which the claim is based.

16

Id. ( internal citations omitted).  Thus, to the extent that § 2.2-4309 limits or modifies the remedy ordinarily available in an action for breach of contract, Carnell has failed to establish that it was an improper exercise of legislative power or an unlawful abrogation of the common law.

Carnell also contends that the twenty-five percent cap results in an unlawful taking under the Fifth Amendment to the Constitution of the United States and Article I, § 11 of the Constitution of Virginia, both of which provide that private property shall not be taken for public use without just compensation.  Upon review of the existing case law, the court is unable to agree.

"[A]though a vested cause of action is property and is protected from arbitrary interference, [a litigant] has no property, in the constitutional sense, in any particular form of remedy . . . ."  Gibbes v. Zimmerman, 290 U.S. 326, 332 (1993).  Likewise, a litigant has no "vested right in the continuance of the rules of common law."  Pulliam v. Coastal Emergency Services of Richmond, Inc., 509 S.E.2d 307, 318 (Va. 1999) (internal citations and quotation marks omitted).  Thus, the statutory cap set forth in § 2.2-4309 does not interfere with a vested right.  Moreover, the statute was enacted long before Carnell's cause of action accrued.  Accordingly, the court finds no unconstitutional taking in this case.  See Id. (emphasizing, in a medical malpractice case, that "there was nothing to prevent the General Assembly from limiting the remedy, so far as unaccrued causes of action are concerned, to attain a permissible legislative objective without running afoul of the 'taking' clauses of the Federal and State Constitutions"); see also Estate of McCall v. United States, 642 F.3d 944, 951 (11th Cir. 2011) (holding that a statutory damages cap did not constitute a taking under the United States Constitution, where it was enacted "long before the Plaintiffs' cause of action . . . vested").

The court must likewise reject Carnell's argument that the statutory cap violates the due process guarantees secured by the Constitutions of the United States and Virginia. "A statutory limitation on recovery is simply an economic regulation, which is entitled to wide judicial deference." Etheridge, 376 S.E.2d at 531 (citing Duke Power Co. v. Carolina Envtl. Study Group, 438 U.S. 59, 83-84 (1978)). Because such statute infringes on no fundamental right, it "must be upheld if it is reasonably related to a legitimate government purpose." Id. In this case, given the particular objectives of the VPPA, the court is convinced that § 2.2-4309 passes muster under this standard.

### iv.    The defendants are entitled to a reduction of the jury's verdict as a matter of law.

For the reasons stated, the court concurs with Judge Kiser's decision on the applicability of § 2.2-4309, and finds no valid basis for altering his grant of partial summary judgment in favor of DRHA and Blaine Square on this issue. Consistent with Judge Kiser's ruling on summary judgment, the jury's verdict on Carnell's breach of contract claim for extra work will be reduced from $515,000.00 to the "statutory maximum" of $142,557.57. Carnell Constr. Corp., 2011 U.S. Dist. LEXIS 8259, at *29.

### B.    Breach of Contract Claim for Removal from the Project

Carnell has moved for a new trial on damages related to its claim that the defendants breached the Contract by removing Carnell from the Project without just cause. Alternatively, Carnell seeks the entry of judgment in the amount of damages awarded by the jury. DRHA and Blaine Square oppose Carnell's motion, and have moved for a reduction of the damages awarded by the jury with respect to this claim.

18

### 1.    **Additional Background**

After the jury returned a verdict in favor of Carnell on its claim that the defendants

breached the contract by removing Carnell from the Project without just cause, the court ruled, as

matter of law, that Carnell would be entitled to recover the remaining retainage withheld by the

defendants pending completion of the Project.  The jury was instructed not to consider the

retainage when determining the amount of damages that Carnell was entitled to recover on this

claim.

The jury was therefore tasked with determining the amount of additional damages that

Carnell suffered as a natural and ordinary result of this breach (i.e., direct damages).  On this

question, the evidence was limited by the court to the profit that Carnell lost on the Contract by

not being permitted to complete the remaining work.  Carnell's evidence on this issue consisted

of the following testimony that its counsel elicited from Michael Scales:

> Q.    Now, I want to turn to the profit and -- with respect to being
>
>        removed from the project without cause?
>
> A.    Okay.
>
> Q.    All right.  How much was left on the Contract at that time?
>
> A.    They had deducted approximately $77,000 of work that we were
>
>        not allowed to perform.
>
> Q.    And what would your profit have been on that portion?
>
> A.    Approximately $12,000.

(8/15/2012 Realtime Tr. at 78.)   The jury nonetheless awarded Carnell $400,000.00 in damages

for this claim.

19

## 2.    The Parties' Arguments

Recognizing that the foregoing testimony is legally insufficient to support the damages awarded by the jury, Carnell argues that it was improperly limited in the types of evidence that it was allowed to present, and that it should be allowed to recover "damages due to Defendants' destruction of . . . an established business," "damages for the loss of good will caused . . . by [the] termination of Carnell's contract," "reasonable expenses caused by third-party claims," and other "consequential damages." (Docket No. 749 at 12-15.) For the following reasons, however, the court is unable to agree.

During the course of this case, Carnell was permitted to amend its complaint on three separate occasions. Carnell's third amended complaint included counts for breach of contract, race discrimination, and retaliation. Unlike the discrimination and retaliation counts, which expressly sought damages for "harm to [Carnell's] name and reputation, the loss of integrity and good will, the loss of its bonding capacity, lost pay, lost profits, extra effort, costs and fees incurred by IFIC, the time and expense of defending Carnell's name and reputation, . . . and other compensatory damages" (Docket No. 265 at 17-18), Carnell's breach of contract count merely asserted that Carnell "has suffered damages in an amount to be proven at trial but not less than $419,575, plus interest" (Id. at 12). This amount included invoices for extra work allegedly performed by Carnell, invoices for overhead incurred during the term of the Contract,[6] and the withheld retainage. (Docket No. 340-2 at 16-17.)

Prior to each of the three trials, Carnell submitted proposed instructions. Carnell's proposed instruction on damages for its breach of contract claim included language from

---

[6] During the first trial, Judge Kiser ruled that the invoices for overhead were not admissible. This ruling was upheld during the third trial.

Instruction No. 45.500 of the Virginia Model Jury Instructions, which is the instruction for direct damages in breach of contract cases.  Carnell did not submit or cite to Instruction No. 45.530, which is the model instruction for consequential damages.  Consistent with its third amended complaint, Carnell only referenced its alleged loss of reputation, good will, and integrity in its proposed instruction on damages for the claims of discrimination and retaliation.

It was not until the morning of August 15, 2012, following the return of the jury's verdict on liability, that Carnell sought to present, under the guise of contract damages, evidence it had anticipated presenting in support of its claims of race discrimination and retaliation.  Given the particular circumstances of this case, which has included three trials and three amended complaints, the court remains convinced that it properly limited the evidence presented by Carnell to that which was reasonably encompassed by the third amended complaint.[7]

Under Virginia law, "[t]here are two broad categories of damages ex contractu: direct (or general) damages and consequential (or special) damages." Roanoke Hospital Ass'n v. Doyle & Russell, Inc., 214 S.E.2d 155, 160 (Va. 1975).  Direct (or general) damages "are those which arise 'naturally' or 'ordinarily' from a breach of contract; they are damages which, in the ordinary course of human experience, can be expected to result from a breach." Id. Consequential (or special) damages "are those which arise from the intervention of 'special circumstances' not ordinarily predictable"; they are "compensable only if it is determined that the special circumstances were within the 'contemplation' of both contracting parties." Id. The issue of whether damages are direct or consequential is a "question of law." Id.

While Virginia law governs the types of damages available for breach of contract, "the form in which they are stated is governed by federal, not state, standards of pleading." Wright &

---

[7] This shift in focus by Carnell was not its first.  As Judge Kiser commented during the first trial, "the common phrase of a moving target fits [Carnell's] case to a T." (Docket No. 243-2 at 2.)

Miller, Federal Practice & Procedure: Civil 3d, § 1311.  Under Rule 9(g) of the Federal Rules of

Civil Procedure, "[i]f an item of special damage is claimed, it must be specifically stated."  Fed.

R. Civ. P. 9(g).  Special damages are defined as those elements of damages that are not the

ordinary result of the conduct alleged but "depend on particular circumstances of the case."

Weyerhaeuser Co. v. Brantley, 510 F.3d 1256, 1266 (10th Cir. 2007); see also Avitia v. Metro.

Club, 49 F.3d 1219, 1226 (7th Cir. 1995) (explaining that special damages are "not the natural

damages associated with such a claim").  "A specific statement of special damages requires not

just the total lump sum, but a statement of the specific items which make up the lump sum."

City & County of San Francisco v. Tutor-Saliba Corp., No. 02-5286, 2005 U.S. Dist. LEXIS

46590, at *51 (N.D. Cal. Mar. 17, 2005).  This heightened pleading standard is "designed to

inform defending parties as to the nature of the damages claimed in order to avoid surprise; and

to inform the court of the substance of the complaint."  Great Am. Indem. Co. v. Brown, 307

F.2d 306, 308 (5th Cir. 1962).

Applying these principles, the court concludes that the damages outlined in Carnell's

reply brief – damages for the alleged destruction of its business, damages for the loss of good

will, and attorneys' fees and other expenses related to third-party claims – are properly

characterized as consequential or special damages, and that they were not adequately pled in the

third amended complaint.[8]  See, e.g., American Cas. Co. v. City of Detroit, 851 F.2d 794, 802

(6th Cir. 1998) (holding that a claim for attorney's fees "is in the nature of special damages and

so should be specifically pleaded if claimed"); Atl. Purchasers, Inc. v. Aircraft Sales, Inc., 705

---

[8] In reaching this decision, the court rejects Carnell's assertion that the requested damages are
"contractual" damages.  The only contractual provision cited by Carnell is a section of the C-700 General
Conditions which applies in the event that a contractor is terminated for convenience.  Because it is undisputed
that Carnell was not terminated for convenience, this provision provides no contractual basis for the damages
requested by Carnell.

22

F.2d 712, 716 n.4 (4th Cir. 1983) (holding that a claim for attorney's fees was barred because the party "failed to state specifically the claim for fees in the complaint"); Henry Pratt Co. v. Stoody Co., 16 F.R.D. 175, 178 (S.D. Cal. 1954) (requiring the plaintiff, in a breach of contract case, to provide a more definite statement of a lump sum claimed for loss of business and loss of good will, since "they are special damages and must be specifically pleaded"); R.K. Chevrolet v. Hayden, 480 S.E.2d 477, 482 (Va. 1997) (holding that damages for the interruption of a business were correctly determined to be consequential damages in an action for breach of contract).

Accordingly, the court remains convinced that evidence of consequential damages was properly excluded, and that Carnell is not entitled to a new trial on damages. Moreover, in light of the undisputed evidence adduced during the damages phase, the court concludes, as a matter of law, that the defendants are entitled to a reduction of the jury's verdict on Carnell's claim related to its removal from the Project.[9] Specifically, the court will reduce the jury's verdict to $12,000.00, which constitutes the profit that Carnell lost by not being able to complete its work. Carnell will also be awarded the remaining retainage in the amount of $60,490.00.

## II. The Defendants' Motions for an Award of Attorney's Fees and Costs as a Sanction for False Testimony

Both defendants have renewed their motions for an award of attorney's fees and costs as a sanction against Carnell for providing false testimony at the first trial. Prior to entering into the Contract with the defendants, most of Carnell's work was performed on behalf of the Virginia

---

[9] Because this conclusion is made as a matter of law, the plaintiff need not be given the option of a new trial on damages. See Lulaj v. Wackenhut Corp., 512 F.3d 760, 766 (6th Cir. 2008) ("[A] court may render judgment as a matter of law as to some portion of a jury award if it is compelled by a legal rule or if there can be no genuine issue as to the correct calculation of damages."); Tronzo v. Biomet, Inc., 236 F.3d 1342, 1351 (Fed. Cir. 2001) (holding that the reduction in compensatory damages did not entitle the plaintiff to a new trial since it "was a purely legal issue," and emphasizing that, "[a]s a matter of law, there was no support for the compensatory damages award beyond that awarded by the district court"); Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1330 (11th Cir. 2009) (holding that "where a portion of a verdict is for an identifiable amount that is not permitted by law, the court may simply modify the jury's verdict to that extent and enter judgment for the correct amount").

Department of Transportation ("VDOT").  During the first trial, Michael and Vincent Scales testified that Carnell had lost its bonding capacity as a result of DRHA's actions, and that Carnell could no longer perform the types of jobs that it had been doing for VDOT without a bond.  To support their motion for a new trial, the defendants proffered a declaration from Don Silies, a VDOT official, in which he averred that construction companies could, in fact, perform work for VDOT without a bond.  Relying on Silies' affidavit, Judge Kiser determined that he was reasonably well satisfied that Michael and Vincent Scales testified falsely, and that their false testimony warranted a new trial.

While Carnell has not sought reconsideration of Judge Kiser's ruling, it has, during the course of the proceedings before this court, presented evidence which tends to support the challenged testimony provided by Michael and Vincent Scales, including a subsequent declaration from Don Silies.  On this record, without a hearing or the submission of additional evidence, the court is simply unable to conclude that the defendants are entitled to an award of attorney's fees and costs as a sanction for the testimony provided during the first trial.  The defendants' motions for such sanction will be denied without prejudice.  If the defendants wish to pursue this motion, they are advised that they must request a hearing and be prepared to proffer additional evidence that would support the imposition of the requested sanction.

### III.   Blaine Square's Motion for Attorney's Fees and Costs as the Prevailing Party on Carnell's Claims of Race Discrimination and Retaliation

Blaine Square was awarded summary judgment on Carnell's claims of race discrimination and retaliation.  It has now moved for an award of attorney's fees as the prevailing party under 42 U.S.C. § 1988(b), and for an award of costs under Rule 54(d) of the Federal Rules of Civil Procedure.

24

To the extent Blaine Square seeks an award of attorney's fees under § 1988(b), the motion will be denied. This statute states that "[i]n any action or proceeding to enforce a provision of sections . . . 1981 . . . [and/or] title VI of the Civil Rights Act of 1964, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." 42 U.S.C. § 1988(b). While § 1988(b) does not distinguish between plaintiffs and defendants, the United States Supreme Court has held that a prevailing defendant is entitled to recover attorney's fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). In this case, the court is convinced that such finding cannot be made. Although Blaine Square was ultimately awarded summary judgment on the claims of discrimination and retaliation, Carnell's claims against this defendant were not so deficient as to support a finding that they were frivolous, unreasonable, or without foundation. Accordingly, Blaine Square's motion for attorney's fees under § 1988(b) will be denied.

Blaine Square also seeks an award of costs under Rule 54(d) of the Federal Rules of Civil Procedure, which provides that "costs – other than attorney's fees – should be allowed to the prevailing party," unless a federal statute, the Federal Rules, or a court order provides otherwise. Fed. R. Civ. P. 54(d). To the extent Blaine Square requests an award of costs under this rule, the motion will be denied without prejudice. Blaine Square's motion is arguably premature, since no final judgment has been entered in the case. Moreover, the motion, in its present form, is procedurally defective. Blaine Square did not submit the exhibit detailing its requested costs until it filed a reply brief. Consequently, Carnell did not have the benefit of this information when preparing its brief in opposition. Additionally, a number of the costs listed in the exhibit are not taxable under 28 U.S.C. § 1920, which "defines the term 'costs' as used in" Rule 54(d).

Herold v. Hajoca Corp., 864 F.2d 317, 323 (4th Cir. 1988) (citing Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441 (1987)). Accordingly, Blaine Square's request for costs under Rule 54(d) will be denied without prejudice.

### Conclusion

For the reasons stated, Carnell's motion regarding damages will be denied; the defendants' motion for judgment as a matter of law and for a reduction of the damages awarded by the jury will be granted in part and denied in part; the defendants' motions for an award of attorney's fees and costs as a sanction for false testimony will be denied without prejudice; Blaine Square's motion for attorney's fees under 42 U.S.C. § 1988(b) will be denied; Blaine Square's motion for costs under Rule 54(d) will be denied without prejudice; the defendants' motions to strike Carnell's responses in opposition to their motions for attorney's fees and costs will be denied as moot; and Carnell's motion to strike Blaine Square's reply brief in support of its motion for attorney's fees and costs will be denied as moot. The court will enter a final judgment in accordance with the jury's verdict on liability and the court's rulings on the parties' post-trial motions.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This ___8th___ day of January, 2013.

_____
Chief United States District Judge

26